[Cite as *State v. Quinones*, 2016-Ohio-7225.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104016**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANDREW QUINONES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-562226-A

**BEFORE:** Kilbane, P.J., Blackmon, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** October 6, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
Erika B. Cunliffe
Sarah E. Gatti
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Anthony T. Miranda
Holly Welsh
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1}  Defendant-appellant, Andrew Quinones ("Quinones"), appeals from the trial court's decision denying his petition for postconviction relief without a hearing.  For the reasons set forth below, we affirm.

{¶2}  The facts underlying this appeal were previously set forth by this court in Quinones's direct appeal, *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544 ("*Quinones I*"):

I.  Procedural History

On December 4, 2012, [Quinones] was indicted on three counts of rape, four counts of kidnapping, one count of gross sexual imposition, and one count of pandering obscenity involving a minor.  The indictment was rendered based on allegations that [Quinones] had molested [the ]victim [and his ex-sister-in-law], S.H., seven years earlier when she was between the ages of nine and ten.

On May 6, 2013, the case proceeded to a jury trial. At the conclusion of the state's case, the state dismissed Count 9, pandering obscenity involving a minor.  At the conclusion of trial, the jury was deadlocked and a mistrial was declared.  A new trial was set for July 8, 2013.

On July 26, 2013, a new attorney filed a notice of appearance on behalf of [Quinones], and a bench trial began on November 19, 2013.  At the conclusion of trial, the trial court found [Quinones] guilty on all counts.

At sentencing, [Quinones] was sentenced to five years for gross sexual imposition, ten years for rape, and life with the possibility for parole after ten years for kidnapping.  The sentences were ordered to run concurrently. The court also declared [Quinones] to be an aggravated sexually-oriented offender.

## II. Statement of the Facts

In March 2004, Heather H. became romantically involved with [Quinones]. Shortly thereafter, Heather learned that she was pregnant with [Quinones's] child. On May 24, 2004, Heather and [Quinones] married. During Heather's pregnancy, [Quinones] was in the military and stationed in Pensacola, Florida while Heather remained in Ohio.

In September 2004, [Quinones] returned to Ohio, without permission from his superiors, when he learned that Heather was experiencing medical complications due to her pregnancy. [Quinones] moved in with Heather and her family in order to care for Heather during the remainder of her pregnancy. At the time, Heather lived with her mother Helen, her 10-year-old sister S.H., and her 11-year-old brother W.H.

* * *

S.H. testified that when she was between the ages of nine and ten, [Quinones] began sexually abusing her. According to S.H., the abuse began with a kiss and escalated into [Quinones] instructing her to "touch his penis," inappropriately touching her, and directing her to perform oral sex. S.H. testified that [Quinones's] requests became more frequent and aggressive. On a specific occasion, [Quinones] forced her to perform oral sex by pulling her elbows together and pushing her head down. S.H. testified that on a number of occasions, he took her down to the basement and forced her to have anal sex. S.H. explained that she complied with [Quinones's] directions because she felt that she had to obey him or she would be punished. S.H. stated that the abuse ended when she moved to Crawford County with her mother and brother in the fall of 2005.

* * *

When S.H. was approximately 16 years old, * * * S.H. disclosed that she had been "molested by a family member" when she was younger and living in Cleveland. * * * Following this conversation, [her school guidance counselor] contacted Crawford County Children and Family Services. [The guidance counselor] also contacted S.H.'s mother, Helen, and set up a meeting where S.H. told her mother about the abuse.

Devon Sipes Ruiz, a case worker for Crawford County Children and Family Services, testified that she was assigned to perform an assessment of S.H. Ruiz testified that once she confirmed that S.H. was no longer residing in

the home with [Quinones], she contacted law enforcement and made them aware of the allegations. Thereafter, Ruiz conducted an interview of S.H. where S.H. described some specific details of her sexual abuse. Ruiz testified that she subsequently sent a copy of her assessment to the Newburgh Heights Police Department.

Detective Brian O'Connell of the Newburgh Heights Police Department was assigned to investigate the sexual assault of S.H. * * * Following his interview of S.H., Det. O'Connell conducted a non-custodial interview of [Quinones]. Det. O'Connell described [Quinones] as "evasive" and "physically uptight."

*Id.* at ¶ 2-7, 10, 12-15.

{¶3} On appeal, Quinones argued that he was denied effective assistance of counsel. Specifically he argued: (1) defense counsel used improper strategy and tactics, i.e., defense counsel attempted to discredit S.H.'s testimony with testimony from Quinones's past sexual partners, suggesting that it was "anatomically impossible" for him to anally rape S.H. without causing her serious physical injuries; (2) allowed impermissible evidence to be admitted at trial, i.e., defense counsel elicited testimony during the cross-examination of Heather and Case Worker Ruiz relating to whether they believed S.H.'s allegations and defense counsel asked Det. O'Connell if he formed an opinion as to Quinones's guilt; and (3) failed to adequately prepare for trial, i.e., defense counsel's conduct throughout the trial placed his level of preparation into question. *Id.* at ¶ 20. We affirmed his convictions, finding that

the perceived errors in defense counsel's performance did not impact the sufficiency of the state's evidence. As noted by the trial court at the sentencing hearing, S.H.'s testimony was consistent throughout the proceedings despite defense counsel's attempts to impeach her credibility and time line. (Tr. 1620-22). As such, [Quinones's] ineffective assistance

of counsel arguments fail the second prong in *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]."

*Id.* at ¶ 27.

**{¶4}** On August 29, 2014, Quinones filed a petition for postconviction relief. In support of his petition, Quinones included his own affidavit. Quinones argued defense counsel was deficient in the following three respects: (1) trial strategy and tactics, i.e., the allegations of sexual abuse were not credible based on the size of Quinones's penis; (2) evidentiary issues, i.e., Heather's testimony that their marriage was terrible and the testimony of Heather, Ruiz, and Det. O'Connell commenting on Quinones's credibility; and (3) trial preparation, i.e., calling Quinones as a witness, and defense counsel was unprepared for voir dire. The trial court denied Quinones's motion and issued findings of fact and conclusions of law. The trial court found that Quinones's claims related to trial counsel's strategies in cross-examination and counsel's failure to object to certain trial testimony are barred by res judicata. The court further found that Quinones's affidavit was self-serving and unsupported by any evidence in the record, and Quinones failed to establish "prejudice from trial counsel's conduct merely because his trial was presided over by a different judge [after the original trial judge recused himself]."

**{¶5}** It is from this order that Quinones appeals, raising the following single assignment of error for review.

Assignment of Error

The trial court violated [Quinones's] right to due process when it denied his petition [for] post-conviction relief without a hearing even though he

demonstrated a genuine issue of material fact and it was not barred by res judicata.

**{¶6}** Quinones argues that he was entitled to a hearing because he "made a showing sufficient to demonstrate that his rights under the Constitution were violated due to ineffective assistance of counsel."

**{¶7}** The trial court's decision to deny a postconviction petition without a hearing is reviewed under the abuse of discretion standard. *State v. Abdussatar*, 8th Dist. Cuyahoga No. 92439, 2009-Ohio-5232, ¶ 16.

**{¶8}** R.C. 2953.21 (A)(1)(a), governs postconviction petitions and provides that

> [a]ny person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

**{¶9}** In order to be entitled to a hearing on a petition for postconviction relief alleging ineffective assistance of counsel, the petitioner must submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness. *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus. *See also State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982)

> ("[w]here ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense

attorney's essential duties to his client but also that said violation was prejudicial to the defendant.")

If a petitioner fails to meet this burden, the trial court may dismiss the petition for postconviction relief without a hearing. *Jackson* at 111.

{¶10} In the instant case, Quinones argues defense counsel was ineffective for the following reasons: (1) trial strategy and tactics, i.e., defense counsel's attempt to discredit S.H.'s testimony with testimony from Quinones's past sexual partners suggesting that it was "anatomically impossible" for him to anally rape S.H. without causing her serious physical injuries, and the allegations of sexual abuse were not credible based on the size of Quinones's penis; (2) evidentiary issues, i.e., Heather's testimony that their marriage was terrible and the testimony of Heather, Ruiz, and Det. O'Connell commenting on Quinones's credibility; and (3) trial preparation, i.e., calling Quinones as a witness, and defense counsel was unprepared for voir dire.[1]

{¶11} A postconviction petitioner who asserts a claim of ineffective assistance bears the initial burden of submitting evidentiary documents containing sufficient operative facts to demonstrate "that his attorney seriously erred and that the deficient performance actually prejudiced him." *State v. Theis*, 8th Dist. Cuyahoga No. 82161, 2003-Ohio-1968, ¶ 10, citing *Strickland*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984); *Jackson* at syllabus. In order to satisfy the prejudice requirement, "the defendant

---

[1] We note that at appellate oral argument, Quinones's appellate counsel advised that defense counsel is facing disciplinary proceedings. We recognize, however, that this information is outside of the record, and we cannot consider it for purposes of this appeal.

must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Strickland* at 694.

{¶12} Additionally, any claim for postconviction relief that was or could have been raised on direct appeal is barred from consideration by the doctrine of res judicata. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Res judicata, however, does not bar claims for postconviction relief when the petition presents evidence outside the record that was not in existence and was not available to the petitioner in time to support a direct appeal. *Cole*, 2 Ohio St.3d at 114, 443 N.E.2d 169.

{¶13} In the instant case, all of Quinones's postconviction arguments going to the effectiveness of counsel, except the "voir dire" argument, are based upon issues that were in fact previously litigated in *Quinones I*. Therefore, these issues are barred by res judicata.

{¶14} Likewise, the "voir dire argument" is also barred by res judicata. Quinones introduced the "voir dire argument" for the first time in his petition for postconviction relief. In support of this argument, Quinones averred that defense counsel insisted on going forward with a bench trial, after the original trial judge recused himself, because defense counsel was unprepared for voir dire. This evidence, however, is insufficient to demonstrate defense counsel's ineffectiveness. It is not new evidence demonstrating how he was prejudiced by defense counsel. Moreover, Quinones should have presented this evidence to this court in his direct appeal. It was discussed on the record by the trial court on the scheduled trial date, November 18, 2013. The trial court stated:

I informed the parties [that I don't feel comfortable acting in terms of a bench trial] and after some consideration a determination was made to keep the case here and to go with a jury trial and I'm comfortable with doing that.

Because of it converting to a jury trial and the fact that counsel had not prepared for voir dire, we had a discussion in chambers. My suggestion was we would start at 1:30; I would conduct my portion of the voir dire, the prosecution would do their portion of the voir dire, and if they did not feel they were adequately prepared to conduct their portion of the voir dire, we would recess for the day and allow them to come back and continue tomorrow morning at nine.

So, it now is scheduled for us to commence the jury selection process at 1:30 this afternoon.

**{¶15}** Thereafter, the court took a recess. When the matter was back on the record, Quinones informed the new trial judge that he wished to proceed with a bench trial.

**{¶16}** Having failed to provide any evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that Quinones was prejudiced by defense counsel's ineffectiveness, the trial court did not abuse its discretion when it dismissed the petition without a hearing.

**{¶17}** The sole assignment of error is overruled.

**{¶18}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

PATRICIA A. BLACKMON, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR